UNITED STATED DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **EMANUEL ENAMORADO,** *Plaintiff*, v. **EXPERIAN INFORMATION SOLUTIONS, INC.,** *Defendant*. | Case Number:   8:24-cv-23 **JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Emanuel Enamorado ("**Mr. Enamorado**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, Experian Information Solutions, Inc. ("**Experian**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages exceeding $50,000, exclusive of attorneys' fees and costs, brought by Mr. Enamorado against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3. The Defendant is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida because the acts complained of were committed and / or caused by the Defendant therein.

## PARTIES

5. Mr. Enamorado is a natural person residing in the City of Lakeland, Polk County, Florida.

6. Mr. Enamorado is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Experian is an Ohio corporation, with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Experian is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Experian is a nationwide Consumer Reporting Agency ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Consumer Disclosure Neither Clear nor Accurate

10. On September 20, 2023, Mr. Enamorado requested his Experian consumer credit disclosure.

11. Upon receipt of Mr. Enamorado's request, Experian was required to "clearly and accurately" disclose all information in Mr. Enamorado's file at the time of his request, including identification of *each* person, including an end user if the report was obtained by a reseller, who obtains a consumer report from Experian within the prior year *for any purpose*. See 15 U.S.C. § 1681g(a)(3)(A)(ii).

12. "Identification" is defined in the FCRA as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." 15 U.S.C. § 1681g(a)(3)(B)(i).

13. Frequently, Experian fails to fulfill this legal obligation.

14. For example, Experian's disclosure shows an inquiry made on December 23, 2022 as such:

**Account name**
EDS/FINWISE BANK

756 E WINCHESTER ST STE 300
MURRAY, UT 84107
866 580 1226

**Date of request(s)**
12/23/2022

**See Exhibit A.**

15. Although not explained *anywhere* in Experian's disclosure to Mr. Enamorado, "EDS" is Elevate Decision Sciences, LLC, a subsidiary of Elevate Credit, Inc., ("Elevate") which is known to the public only by its trade names, Rise Credit and Elastic Credit.

16. Almost no consumer—even highly-educated ones—would know that "EDS" refers to Elevate Decision Sciences, LLC, a company with no website, no marketing, no advertising, and whose name appears buried deep within a filing made to the Securities and Exchange Commission, noting it has a technology and support contract with FinWise. *See* https://www.sec.gov/Archives/edgar/data/1651094/000162828017005676/elevate10-qxq12017.htm.

17. Thus, rather than disclose the entity making the inquiry as "Rise Credit" – the tradename the lender is known to the public as, and which is easily searchable online, Experian disclosed *two* different persons supposedly all making the *singular* inquiry, without indication of which entity or entities actually requested the report.

18. Experian further obfuscated its disclosure, as one of the entities was disclosed using abbreviations almost impossible for even a highly-reasonable person to comprehend, with the other, FinWise Bank, offering little help since it partners with over 200 different online lenders.

19. Other inquiries are equally cryptic, like an inquiry on May 12, 2023 stating the name of the business obtaining his report was:

| Account name | Date of request(s) |
|---|---|
| CLARITY/ATLAS-FAWKES | 05/12/2023 |
| 113 E SOUTH FRONT ST<br>ORRICK, MO 64077<br>No phone number available | |

**See Exhibit A.**

20. "Clarity" refers to Clarity Services, Inc., a subsidiary of Experian and a CRA itself, although no guide or legend on the report indicates as much to the consumer.

21. "Atlas" refers to Atlas Personal Loans, an online lender which makes loans at interest rates often exceeding 700% annually.

22. "FAWKES" likely refers to a service provider which helps service Atlas' loans.

23. Notably, Experian failed to disclose the actual name of the stated creditor of Atlas' loans – The Bank of Orrick.

24. Experian thus disclosed three different persons supposedly all making the singular inquiry, without indication of which entity or entities actually requested the report.

25. Even legitimate, non-predatory lenders are often disclosed by Experian in shorthand which is difficult, if not impossible, to comprehend, such as a Wells Fargo Bank Credit Card Services inquiry made May 4, 2023:

```
Account name                          Date of request(s)
WF CRD SVC                            05/04/2023

PO BOX 14579
DES MOINES, IA 50306
800 967 9521
```

**See Exhibit A.**

26. Wells Fargo Bank is not known to the public as "WF CRD SVC," nor is it a trade name, written in full, used by Wells Fargo Bank.

27. Experian has been sued numerous times in the past for failing to disclose the names of persons obtaining credit reports as required by law.

28. The lack of accurate, full disclosure of who had obtained his credit report caused Mr. Enamorado great frustration and emotional distress and made him concerned he was the victim of fraud or identity theft.

**Experian Sells Multiple Reports with False, Inaccurate, and Duplicate Tradelines**

29. Around February 15, 2015, Westlake Financial Services ("Westlake") ("Westlake") made an installment loan for a car to Mr. Enamorado.

30. Around September 2018, Westlake reported the account as past-due and charged-off, with a balance of $1,308 owed ("the Debt"). **SEE PLAINTIFF'S EXHIBIT B.**

31. Sometime in April 2021, Westlake sold or otherwise assigned the Debt to Jefferson Capital Systems ("Jefferson"), a collection agency based in Minnesota.

32. Around May 20, 2021, Westlake reported the account as charged-off with a balance of $1,308 owed.

33. No later than June 30, 2021, Westlake reported to Experian that the account had been transferred to another lender, Jefferson.

34. Despite this report, Experian's automated systems failed to update Westlake's tradeline.

35. As a result, Experian continued to report Westlake's tradeline with a past-due balance.

36. In September 2021, Jefferson began reporting the Debt, monthly, to Experian. **See Exhibit C.**

37. Jefferson reported to Experian that Mr. Enamorado owed $1,307 and that the original creditor was "WESTLAKE SERVICES." *Id.*

38. As a result, the same debt appeared as two separate, distinct tradelines in reports produced by Experian concerning Mr. Enamorado from September 2021 onwards.

39. These two highly adverse tradelines create the impression that two separate and distinct debts were owed to Westlake, rather than, at most, one.

40. Anyone viewing Mr. Enamorado's credit report would falsely conclude he owed two different debts to two different creditors totaling $2,615, instead of a singular debt of $1,308.

41. This would materially affect how a reasonable reader of a report interprets Mr. Enamorado's credit standing.

42. As but one example, when Mr. Enamorado later applied for a home loan guaranteed through the Federal Housing Administration ("FHA"), his potential lender was required by FHA underwriting guidelines to include 5% of any unpaid, nonmedical collection balance into his monthly debt-to-income ratios.

43. FHA guidelines provide no latitude to the lender and require 5% of the balance of collection accounts to be added to monthly debt-to-income ratios, even if the lender can reasonably ascertain a debt is duplicated.

44. Due at least in part to Experian's errant reporting, Mr. Enamorado was unable to obtain the mortgage he applied for.

45. As a result, Mr. Enamorado has been unable to financially benefit form building equity in property he owns.

### **Experian Fails to Implement Its Own Written Policies**

46. Experian requires its data furnishers, including Westlake, to adhere to Metro 2 standards for credit reporting.

47. Metro 2 is a uniform set of reporting standards and a *lingua franca* utilized by nationwide CRAs for consumer reporting.

48. Metro 2 standards require data furnishers to make monthly updates to balances, payment histories, etc., for any account that does not have a $0 balance, even if the update is that the balance information remains the same as it did the previous month.

49. This requirement was primarily implemented to ensure that accounts do not appear in reports sold to lenders with out-of-data balance information.

50. Mr. Enamorado's Experian consumer disclosure dated September 20, 2023, shows that the last time Westlake updated its information to Experian was May 20, 2021. *Id.*

51. Westlake reported to Experian in June 2021 that the account had a status of $0 due to being transferred to another lender.

52. Westlake reported the same data to Equifax and Trans Union, the other two large nationwide CRAs.

53. Equifax and Trans Union deleted the account from Mr. Enamorado's credit file upon receipt of this information; only Experian continued to report the tradeline after this time.

54. The fact the two other large nationwide CRAs quickly and successfully deleted the Westlake tradeline from their files when given the exact same information from Westlake further evidences Experian's lack of reasonable procedures to ensure maximum possible accuracy of the reports it sells.

55. Experian's error in not deleting the account when instructed to by its data furnisher was then compounded by its continued failure to observe that the Westlake tradeline was no longer being re-reported monthly as required by Metro 2 guidelines.

56. The fact Westlake made no normal, monthly, in-cycle report about the Account after June 2021 should have put Experian on notice the data it was reporting was no longer accurate or up-to-date since it no longer complied with Metro 2 requirements.

57. In September 2023 alone, Experian sold at least 10 reports to different automotive lenders, including Global Lending Services and Suncoast Credit Union, concerning Mr. Enamorado, which, upon inform and belief, included the duplicate Westlake tradelines.

58. Despite the fact the Westlake tradeline was, at that point, more than 17 months out-of-date, Experian continued to include the data in reports it compiled and sold concerning Mr. Enamorado.

59. Experian's records indicate that it sold at least 60 reports on Mr. Enamorado after June 2021.

60. On information and belief, each of these reports included both the Westlake and Jefferson Capital Tradelines, falsely indicating two debts owed by Mr. Enamorado.

61. The simultaneous, duplicate reporting of a balance by an original creditor (who still owned title to the debt) as well as a debt collector assigned to collect the debt plausibly violates the FCRA as it could materially mislead the reader of the report; see *Hansen v. Mountain America Federal Credit Union*, M.D. UT, Case No. 2:22-cv-00583-TC, June 23, 2023.

62. Experian has no reasonable procedures in place to prevent obviously out-of-date information from appearing in a consumer's credit history.

63. While Experian does utilize automated procedures to purge negative tradelines after seven years, it has no procedures at all which purge stale, inaccurate, and out-of-date data prior to the seven-year mark.

64. As a result of Experian's actions, Mr. Enamorado has suffered damages, including lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to his reputation.

65. Mr. Enamorado has hired this law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## **EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**

66. Mr. Enamorado adopts and incorporates paragraphs 1 – 65 as if fully stated herein.

67. Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Enamorado when Experian sold at least **60 reports** which contained erroneous duplicate tradelines with both the Westlake and Jefferson Capital reporting simultaneously.

68. Experian has been sued before for reporting a debt as owed simultaneously to the original creditor and a subsequent purchaser and has been notified through litigation of the flaws in its systems which result in out of date information continuing to be included in a consumer's file.

69. Experian's conduct was thus willful, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

70. As a result of its conduct, Experian is liable to Mr. Enamorado pursuant to the FCRA for the greater of Mr. Enamorado's actual damages or statutory damages of up to $1,000 for *each occurrence*, per 15 U.S.C. § 1681n.

**WHEREFORE,** Mr. Enamorado respectfully requests this Honorable Court enter judgment against Experian for:

 a. The greater of Mr. Enamorado's actual damages or statutory damages of **$1,000** per incident (at least $60,000 as of filing), pursuant to 15 U.S.C. § 1681n(a)(1),

 b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

 c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

 d. Such other relief that this Court deems just and proper.

## COUNT II
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

### Pled in the alternative to Count I

71. Mr. Enamorado adopts and incorporates paragraphs 1 – 65 as if fully stated herein.

72. Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Enamorado when Experian sold at least **60 reports** which contained erroneous duplicate tradelines with both the Westlake and Jefferson Capital reporting simultaneously.

73. Experian's conduct was negligent, as Experian had a legal duty to enact procedures to assure maximum possible accuracy of consumer reports sold regarding Mr. Enamorado, and breached that duty.

74. As a result of its conduct, Experian is liable to Mr. Enamorado pursuant to the FCRA for Mr. Enamorado's actual damages per 15 U.S.C. § 1681o.

**WHEREFORE,** Mr. Enamorado respectfully requests this Honorable Court enter judgment against Experian for:

a. Mr. Enamorado's pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## COUNT III
## EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

75. Mr. Enamorado adopts and incorporates paragraphs 1 - 65 as if fully stated herein.

76. Experian violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, when applicable, that procured Mr. Enamorado's consumer report during the one-year period preceding the date on which the request was made.

77. Experian has been notified through litigation that its disclosures to consumers fail to properly disclose the end-users of its consumer reports.

78. Experian's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide clear and accurate disclosures.

79. As a result of its conduct, Experian is liable to Mr. Enamorado pursuant to the FCRA for the greater of Mr. Enamorado's actual damages or statutory damages of up to $1,000 for *each occurrence*, per 15 U.S.C. § 1681n.

80. Alternatively, Experian's conduct was the result of negligence and Experian is liable to Mr. Enamorado for his actual damages per 15 U.S.C. § 1681o.

**WHEREFORE,** Mr. Enamorado respectfully requests this Honorable Court enter judgment against Experian for:

a. The greater of Mr. Enamorado's actual damages or statutory damages of **$1,000** per incident pursuant to 15 U.S.C. § 1681n(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT IV
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

**Pled in the alternative to Count III**

81. Mr. Enamorado adopts and incorporates paragraphs 1 - 65 as if fully stated herein.

82. Experian violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, when applicable, that procured Mr.

Enamorado's consumer report during the one-year period preceding the date on which the request was made.

83. Experian's conduct was negligent, as Experian had a legal duty to disclose the end-users of reports sold, but failed to do so.

84. As a result of its conduct, Experian is liable to Mr. Enamorado pursuant to the FCRA for Mr. Enamorado's actual damages, per 15 U.S.C. § 1681o.

**WHEREFORE,** Mr. Enamorado respectfully requests this Honorable Court enter judgment against Experian for:

a. Mr. Enamorado's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Mr. Enamorado hereby demands a trial by jury on all issues so triable.

Respectfully submitted on January 3, 2024, by:

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar Number: 119168
Seraph Legal, P.A.
BGeiger@seraphlegal.com
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230 (Ext: 303)
Fax: 855-500-0705
*Counsel for Plaintiff*

**EXHIBIT LIST**

| | |
|---|---|
| A | Mr. Enamorado's Experian Consumer Disclosure, September 20, 2023, Inquiry - Excerpts |
| B | Mr. Enamorado's Experian Consumer Disclosure, September 20, 2023, Westlake Tradeline - Excerpt |
| C | Mr. Enamorado's Experian Consumer Disclosure, September 20, 2023, Jefferson Capital Tradeline - Excerpt |